**Opinion filed April 2, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-07-00201-CR

———————

## PATRICK MICHAEL OBRIEN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 410th District Court**

**Montgomery County, Texas**

**Trial Court Cause No. 07-02-01418-CR**

## M E M O R A N D U M   O P I N I O N

The jury convicted Patrick Michael Obrien[1] of four offenses of aggravated sexual assault of a child, two offenses of sexual assault of a child, four offenses of indecency with a child by contact, and two offenses of indecency with a child by exposure. The jury assessed his punishment at confinement for sixty years for two of the aggravated sexual assault offenses, fifty years for the remaining aggravated sexual assault offenses, fifteen years for each of the sexual assault offenses, fifteen years for each of the indecency by contact offenses, and seven years for both indecency by exposure offenses. For each of the twelve offenses, the jury assessed a fine of $10,000. We affirm.

---

[1]We note that appellant's last name is spelled "Obrien" in the clerk's record and spelled "O'Brien" in the reporter's record.

The victims were appellant's daughter, his stepson, and his son. Count Nos. One through Four addressed 2005 offenses against his then nine-year-old daughter. Count Nos. Five through Eight involved 2001 and 2002 offenses against his stepson who was thirteen and fourteen. Count Nos. Nine through Twelve concerned the 1999 and 2000 offenses against his son who was twelve and thirteen.

In his first seventeen points of error, appellant challenges the sufficiency of the evidence to support his conviction for each offense. In his eighteenth point, appellant contends that his conviction for indecency with his daughter by exposure is barred by the doctrine of double jeopardy because of the jury's verdict of guilty of aggravated sexual assault of his daughter and two offenses of indecency by contact with his daughter. In his final point, appellant contends that double jeopardy also bars his conviction of sexual assault by contact of his stepson because of the jury's verdict of guilty of the sexual assault by penetration of his stepson.

In order to determine if the evidence is legally sufficient, the appellate court must review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jackson v. State,* 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex. Crim. App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

The appellate court reviews the factfinder's weighing of the evidence and cannot substitute its judgment for that of the factfinder. *Cain*, 958 S.W.2d at 407; *Clewis*, 922 S.W.2d at 133. Due deference must be given to the factfinder's determination, particularly concerning the weight and credibility of the evidence. *Johnson*, 23 S.W.3d at 9; *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04

(Vernon 1979); *Jones*, 944 S.W.2d at 647. An appellate court has the authority to disagree with the factfinder's determination "only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Johnson*, 23 S.W.3d at 9.

Appellant's first six points address the sufficiency of the evidence to support his convictions for the offenses against his daughter. The jury convicted appellant of the aggravated sexual assault of his daughter by placing his sexual organ in his daughter's mouth, of indecency with his daughter by touching her genitals, of indecency with his daughter by having her touch his genitals, and of indecency with his daughter by showing his genitals to her. Appellant contends that the evidence is factually insufficient to support his convictions for the aggravated sexual assault and the indecency by having his daughter touch him charges because the only direct evidence was his daughter's testimony, because he denied the incident occurred, and because his daughter's mother (his ex-wife) had a motive to fabricate her testimony. Appellant challenges the legal and factual sufficiency of the evidence to support his convictions for indecency by touching his daughter's genitals because he contends that there is no evidence he actually touched his daughter's genitals; that the evidence established that, at the most, he placed his hand on top of his daughter's hand to show her how to touch herself; and that, at best, any intent was to arouse or gratify his daughter's sexual desires and not his own. Appellant argues that the evidence is legally and factually insufficient to support his conviction for exposing his genitals because exposure is included in the other three offenses and because conviction of indecency by exposure violates his double jeopardy protections. This argument is also the basis for his eighteenth point.

The daughter testified that she was eleven years old and in the fifth grade at the time of the trial. She described how, when she lived on Shady Oaks, appellant would show her movies of "[w]omen and boys having sex" and of naked women "posing." She stated that having sex meant where a "boy pushes his private part into a girl's" private. She remembered one of the movies was named "The Housekeeper" and was about a maid having sex with a male. Sometimes, appellant and his son would watch the movies with her. Both appellant and his son would be "playing with theirselves" during the movie. She described how sometimes appellant and his son would play "individually" and sometimes "they would do it together." When it was just appellant and her, she would "[p]lay with [appellant]."

3

Appellant also showed her pictures on his computer in files labeled "Puffies" and "Reds." She stated that "puffies" meant a "puffy nipple" on naked women. "Reds" were naked redheaded women "posing." Appellant told her not to tell her mother.

At his office, appellant took her hand and rubbed it on her private. He told her that that was her "pussy" and that she "should rub" her "click" because "it felt good." She could not remember if appellant's hand actually touched her private, but she remembered that her privates were only rubbed because appellant's hand was on top of her hand and moving her hand. She repeatedly testified that appellant "showed" her and that he "just rubbed" her. Sometimes, she moved her hand up and down on appellant's private part. Appellant told her that that was his "dick." His daughter testified that, while she was moving her hand, "[w]hite stuff" came out of the "hole" on "the top" of his private part. The "white stuff" went everywhere, and appellant had to clean it up with a paper towel. He told his daughter that the "white stuff" was called "cum." He told her to lick and suck on his private part. She did, but nothing came out. Appellant also pulled his pants down, put his hands on his private part, and did "an up and down motion."

Most of the time that she was with appellant, they would sleep together. They had slept in bed together after appellant touched himself and after she put her mouth on his private part. She testified that she did not remember which type of touching occurred first and that she was seven or eight when this behavior started.

Appellant's daughter testified that he had told her to keep this a secret. She did not tell for awhile because she did not want appellant to be mad at her. Finally, she had a "very sick stomach" and "just couldn't keep it inside" anymore. Before she told her mother, she tried to call appellant to be sure it was okay with him to tell because she did not want him to be mad.

His daughter further testified that she loved appellant, that she was upset her parents had divorced, and that she wanted them to be a family. She liked going to appellant's home, missed appellant, and was not mad at him. She stated that appellant had never put anything inside of her sexual organ. His son would sometimes lick the cheek part of her bottom. Both appellant and his son would kiss her by putting their tongues in her mouth.

She testified that appellant told her not to tell her mother because her mother would put him in jail. She "thought [that] it was normal" and that "everybody did it." As she got older, she started

4

getting a funny feeling in her stomach and decided to call appellant to see if it would be okay to tell. When she called him, no one answered the phone.

Cheryl Lynn Obrien testified that she had been married to appellant but that they were divorced and that the victim was her daughter. On June 12, 2005, Cheryl had been watching a program about sexual abuse and about strangers inappropriately touching children. She had talked "very vaguely" to her daughter about "being touched" before. That day while she was taking a bath and her daughter was lying on the bathroom floor reading a book, Cheryl talked to her daughter again, told her that it was wrong, and asked her daughter to always tell her if that ever happened. Her daughter left the bathroom for a "couple of minutes." When she returned, she told Cheryl that she had to tell her something and that Cheryl could not get mad. Her daughter told her that appellant had showed her pictures of naked people posing and having sex, that sometimes she touched appellant, and that appellant had touched her "down there." While her daughter showed Cheryl how she had touched appellant by moving her hand up and down, her daughter was crying. Her daughter also said that sometimes she used her mouth instead of her hand. Her daughter asked Cheryl not to hate her and explained that she had never told because appellant had said that Cheryl would put him in jail. Cheryl described how her daughter told what channel they had watched the movies on and how appellant had "rubbed her down in her privates." Her daughter used the words "playing with" to describe masturbation. Cheryl stated that she called the police after talking with her daughter.

Appellant testified that his divorce from Cheryl had not been amicable and that there had been a lot of questions about money. Appellant stated that he had never touched his daughter in any way for sexual gratification. He further stated that he had never done anything sexually inappropriate with his daughter and that he had never exposed himself to her. He denied any sort of sexual activity with any of the three children. Appellant also denied any knowledge of a movie called "The Housekeeper" and testified that he never had files called "Reds" or "Puffies" on his computer.

When all of the evidence is viewed in a light most favorable to the verdict, we find that the evidence is legally sufficient to support the jury's decision that appellant committed the offenses of indecency with his daughter by touching her genitals and by exposing his genitals. His daughter testified that appellant would "play" with himself while they watched movies together, that he had pulled his pants down and showed her his "private parts," and that he had showed her how to rub his

5

"dick." She also testified that appellant had taken her hand in his hand and rubbed her private part. Cheryl testified that appellant's daughter described how appellant had rubbed her "down there." A rational jury could have found beyond a reasonable doubt that appellant used his hand to teach his ten-year-old daughter how to masturbate and that he did so for his own sexual arousal and gratification. His daughter testified concerning multiple instances of touching and masturbation. A rational jury could have found beyond a reasonable doubt that appellant exposed his genitals to his daughter at various times.

As a factfinder, the jury balanced not only appellant's testimony but also his demeanor when he denied any possible sexual misconduct and described his concerns about his former wife's motives and his daughter's lying about the sexual activities between them and between him and his stepson with appellant's daughter's testimony and demeanor. The jury concluded that the evidence established beyond a reasonable doubt that appellant had exposed his genitals to his daughter, had his daughter put her mouth on his penis, had touched his daughter's sexual organ, and had his daughter touch his penis. When all of the evidence is viewed in a neutral light, we find that the evidence supporting the verdicts concerning the four offenses against appellant's daughter is not so weak that the verdicts are clearly wrong and manifestly unjust and that the verdicts are not against the great weight and preponderance of the conflicting evidence. The evidence is factually sufficient to support appellant's convictions for the offenses alleged in Count Nos. One through Four. All of appellant's challenges to the sufficiency of the evidence to support his convictions for offenses against his daughter are overruled.

In his next six points, appellant challenges the sufficiency of the evidence to support his convictions for committing the four offenses against his stepson. The jury convicted appellant of two offenses of indecency by contact by having his stepson touch appellant's genitals (Count Nos. Five and Six). The jury also convicted appellant of the sexual assaults of his stepson by penetrating his stepson's mouth with his sexual organ (Count No. Seven) and by causing his stepson's mouth to contact his sexual organ (Count No. Eight). The sexual assault offenses were not aggravated offenses because his stepson was fourteen at the time. TEX. PENAL CODE ANN. § 22.011(c)(1) (Vernon Supp. 2008). Appellant contends that the evidence is factually insufficient to support both indecency convictions because the only direct evidence was his stepson's testimony and because Cheryl testified that she had never observed anything that would suggest or support that

6

inappropriate sexual activity was occurring between appellant and his stepson. Appellant challenges both the legal and factual sufficiency of the evidence to support the sexual assault offenses because the only direct evidence was the stepson's testimony. Appellant contends that a rational jury could not have found penetration based on his stepson's testimony concerning "oral pleasure."

Appellant's stepson testified that he was nineteen at the time of trial. The stepson described how he enjoyed being around appellant, how for "a long time" appellant "was [his] dad," and how they were "almost a perfect family except for maybe a couple of little arguments here and there over school or something like that." When they were living in a house on Powell Street, appellant showed his stepson "sexual pictures" on the computer. The stepson described the pictures as a "man and a woman having intercourse." That same week, appellant showed him a "pornographic video." The video showed men and women having sex as well as women having sex with each other. Appellant took the video out of a "little cabinet in the stairwell" that had a padlock on it. While there was one key to the cabinet, appellant showed him how to open the lock with a steak knife. His mother did not know about the videos, and they only watched them when she was gone.

Appellant, his son, and his stepson would watch the videos together. Appellant and his son would have shirts on but no pants. First, they would masturbate themselves. Then, appellant would masturbate his son. The first time his stepson saw this, no one touched him. Later, when he was watching a video with appellant, appellant reached over and masturbated his stepson until his stepson ejaculated. The stepson also masturbated appellant. The next day, appellant's son was trying to find the pictures on the computer when appellant came over, found the pictures, and gave his son "oral pleasure." His son masturbated both appellant and appellant's stepson while the stepson masturbated appellant and appellant's son.

Later, when the three were masturbating while watching the computer, appellant put his mouth on his stepson's penis and gave him "oral pleasure for awhile." Then, appellant told his stepson to do the same to him. Appellant told both boys that it was his "fatherly duty to teach [them] about sex" and "to show [them] this type of stuff" and that they should not tell Cheryl because she would get really mad. His stepson testified that he "figured it, you know, the father must show the kid this because, you know, [he] guess[ed] it would teach the kid later in life."

Appellant's stepson remembered one specific incident when the three had gone fishing. Either appellant's son or stepson said that they "were horny," and appellant pulled the boat into "a

little cove thing." The three masturbated and gave each other oral pleasure. Appellant asked his stepson if "he could go anal." His stepson answered no because "it just didn't feel right."

His stepson moved out right before he started high school. He was "really good friends" with appellant's son, and he would go and spend the night with him and appellant. Appellant's stepson testified that the mutual masturbation and oral pleasure continued between the three and that he had been "convinced that it was [appellant's] duty to show [him] these things, that [appellant] was teaching [him] stuff that [he] guess[ed] he could use later in life so [he] wouldn't be embarrassed because [he] didn't know." The sexual activity stopped when the stepson quit going over to appellant's home sometime in late 2004 or early 2005.

Appellant's stepson testified that he was aware that an adult "with like a five[-]year[-]old kid or a ten-year[-]old kid" was "extremely wrong." But since he was not "forced into it," he thought what appellant, appellant's son, and he were doing was not wrong. He testified that he "figured what happened to [him] was wrong" when he saw how people reacted when his little sister told what appellant had done to her. Appellant's stepson stated that he was embarrassed, figured he would "let it go because it was the past," and did not mention appellant's sexual activity with him. Later, he told the district attorney's office because he felt that they had heard about "this stuff before"

Appellant's stepson further testified that he never saw anything happen between appellant and appellant's daughter. However, sometimes pornographic videos would still be in the VCR, or pornographic pictures would be saved on the computer where his daughter could "just open" the file, and a bottle of personal lubricant would be out on the computer desk. His stepson had watched appellant use personal lubricant, and once, appellant had provided him with some.

Appellant's stepson testified that, while he did not hate appellant, he had a "strong dislike for what has happened with the events" and that he "kind of [felt] sorry for [appellant]." He was upset at first that appellant and his mother were divorcing because appellant had made his mother happy and because appellant was his dad. He stated that he thought it would be "kind of [a] far stretch" for his family to get back together now.

Appellant testified that his stepson was lying and that he had never done any of the activities his stepson testified about.

Appellant's son testified using the term "oral sex" to describe some of the sexual activity between appellant and his stepson, between appellant and himself, and between appellant's stepson

8

and himself. His son also testified that the three performed oral sex on each other during the fishing trip.

When all the evidence is viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's findings that appellant committed the offenses of sexual assault with his stepson. Likewise, when viewed in a neutral light, the evidence is factually sufficient to support the convictions for indecency and sexual assault. A rational jury could have determined that by "oral pleasure" appellant's stepson was referring to oral sex and to the penetration of mouths by sexual organs. The evidence supporting the verdicts concerning the four offenses against appellant's stepson is not so weak that the verdicts are clearly wrong and manifestly unjust, and the verdicts are not against the great weight and preponderance of the conflicting evidence. These points are overruled.

In his next five points, appellant challenges the sufficiency of the evidence to support his convictions for the four offenses against his son. The jury found appellant guilty of exposing his genitals to his son (Count No. Nine) and of aggravated sexually assaulting his son by penetrating his son's mouth with his sexual organ (Count No. Ten), by contacting his son's mouth or penetrating his son's mouth with his sexual organ (Count No. Eleven), and by having his son penetrate appellant's anus with his son's sexual organ (Count No. Twelve). The sexual assault offenses were aggravated offenses because his son was alleged to have been younger than fourteen. TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (Vernon Supp. 2008). Appellant contends that the evidence is factually insufficient to support the conviction for exposure because his son's testimony was the only direct testimony of the exposure. Appellant challenges the factual sufficiency of the aggravated sexual assaults in Count Nos. Ten and Eleven on the grounds that there is insufficient evidence of penetration and to establish the age of his son. He contends that the final aggravated sexual assault conviction was both legally and factually insufficient to show that his son was under the age of fourteen.

Appellant's son testified that he did not see appellant during the first nine years of his life. When he was nine and living at a halfway house in San Antonio, appellant came to meet him. When he was ten years old and in the fifth grade, he moved in with appellant, Cheryl, appellant's daughter, and appellant's stepson. They lived on Powell Street. His son stated that this was a "struggling period" for him. He had been on Ritalin for hyperactivity, Depricote for depression, and zolpidem

9

as a sleep aid; and he was not "exactly the best kid [he] could have been in school." He described Cheryl as an "OCD clean freak" and stated that that caused a strain. Overall, he stated that the living conditions were constructive and that the situation was working. Cheryl was strict in a "good motherly values" way. During his sixth grade year, appellant began tapering off his son's medication.

Appellant's son testified that, during the six or seven years he lived in the Powell Street house, appellant touched him in inappropriate ways. He thought that he had been in the fifth or sixth grade when the touching started. One night when he could not sleep, he walked into the living room while appellant was watching internet porn on the televesion. He was curious and asked appellant questions. The pictures were a "random set of male on female, anal, vaginal sex, lesbians." Appellant's son stated that "that night, [he] was taught how to masturbate with [his] hand." His son stated that he had trouble with dates, that he thought this occurred in the summer of 1998, and that he was twelve or thirteen at the time.

His son testified that "it led from there to oral sex between [him] and [appellant's stepson] and [appellant]." Sometimes, the boys would "do it" in front of appellant. Sometimes, they would "do it" when they were by themselves. When appellant masturbated in front of his son, he exposed his genitals to his son.

Appellant's son testified that the next thing that "happened" to him that "was different" was that he had anal sex with appellant. One time, he was in trouble and had to stand in the corner on his toes. After he had been standing there awhile, appellant came into the room and said that "sometimes he would do things when he was younger just because he wanted to do something to his father." Appellant asked his son if that was the case. His son stated that he "used [this] as an excuse to get out" of the corner. They went back to the computer room and "got naked." A masturbation session began, and appellant also put his own finger into his own anus. Appellant then asked his son "what is it that [he] would like to do to [appellant]." His son answered that he "really hadn't wanted anything to do with [appellant]" but that he "just wanted to feel what a woman was like." Appellant put lubricant on "his butthole," and they "proceeded to have anal sex." Appellant asked his son to perform anal sex on him, but appellant did not perform anal sex on his son.

Appellant's son described how appellant would masturbate and ejaculate in front of him. Sometimes, appellant would use lubricant on his anus and on his finger. His son testified that, when

he was younger than fourteen, appellant had put his sexual organ inside his son's mouth, and he had put his sexual organ inside of appellant's mouth. Appellant's son also described how appellant's daughter had "jacked [him] off once," how he had touched her genitals, and how he had licked the cheeks of her butt. When his son told appellant about this activity, appellant told his son that he was not upset and that it "was going to be okay."

On cross-examination, appellant's son testified that he was not sure if he was thirteen or fourteen when the anal sex occurred after he had been standing in the corner. Around the time that he was fifteen, appellant's son decided that he was not going into appellant's office "anymore for the purposes of masturbation." Appellant's son remembered the oral sex in the water but had no "recollection" of appellant attempting anal sex with his stepson.

On redirect, appellant's son testified that appellant had offered to pay for counseling if he would testify that nothing had happened between them. His son stated that he "hem hawed" because he loved appellant very much and because he would not be the kind of person he was if appellant had not come into his life. He remembered that he moved to Powell Street in August 1998 and that he moved from Powell Street during Christmas of his sophomore year in high school.

Cheryl testified that appellant's son moved in with the family in 1998 when they lived on Powell Street. The record reflects that appellant's son and stepson would have both been ten years old and his daughter would have been two years old. They left the Powell Street house in the spring of 2004. Cheryl's divorce from appellant was final in 2005.

Appellant denied any sexual misconduct with his son. He stated repeatedly that his son as well as his daughter and stepson were lying. Appellant testified that he did ask his son to testify in his behalf but that he never asked his son to say that nothing happened between them "because nothing did happen."

After applying the applicable standards of review, we find that a rational jury could have found all of the elements of each offense. As the sole finder of fact, the jury was the sole judge of the weight and the credibility of the witnesses' testimony. Articles 36.13, 38.04; *Jones*, 944 S.W.2d at 647. When viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the convictions for sexual assault of his son when his son was under the age of fourteen. When viewed in a neutral light, the evidence supporting the verdicts concerning the four offenses against appellant's son is not so weak that the verdicts are clearly wrong and manifestly unjust.

11

Further, the verdicts are not against the great weight and preponderance of the conflicting evidence. These points are overruled.

In his final two points, appellant contends that his conviction for exposing his genitals to his daughter (Count No. Four) and conviction for sexually assaulting his stepson by causing his stepson's mouth to contact appellant's sexual organ (Count No. Eight) are barred by double jeopardy based on his convictions of indecency by contact and aggravated sexual assault of his daughter (Count Nos. One through Three) and sexual assault by penetration with his stepson (Count No. Seven). Appellant contends that exposure of his genitals would be lesser included offenses of indecency by contact and sexual assault because neither indecency by contact nor sexual assault could possibly occur without the necessary exposure of genitals. Appellant also contends that, on the occasions where his daughter stated that she saw him masturbate, there was no evidence that, when he exposed himself for this activity, he was aware that she was present. As to the offense against his stepson, appellant argues that his conviction for penetrating his stepson's mouth precludes his conviction for contacting his stepson's mouth with his sexual organ because contact would necessarily have occurred prior to penetration. Therefore, appellant concludes that his convictions for indecency by exposure with his daughter and sexual assault of his stepson by contact result in multiple prosecutions and punishments for the same offenses.

While appellant correctly contends that a conviction cannot be maintained for both an attempt to commit an offense and the completion of the identical offense, appellant appears to be attempting to limit the evidence of the sexual activity to only three instances with his daughter (Count Nos. One through Three) and three instances with his stepson (Count Nos. Seven, Nine, and Ten). He ignores his daughter's testimony that appellant would pull his pants down and show her his genitals when they would watch movies together and that appellant would sometimes masturbate in front of her while they watched movies or looked at pictures. He ignores her testimony that this was a repeated course of action and was not limited to three isolated instances. He, likewise, ignores his stepson's testimony that mutual "oral pleasure" continued between appellant, his son, and his stepson because appellant had convinced him that this activity was what fathers taught their sons so that the sons would not be embarrassed later on in life by their lack of sexual knowledge. Again, appellant attempts to limit the evidence to only one instance of oral sex between him and his stepson. He also

reasserts his argument of what a rational jury could infer from his stepson's testimony of "oral pleasure" while ignoring his son's description of the activity as "oral sex."

The record does not support appellant's characterizations of the evidence. The record does support the jury's convictions for indecency by exposure with his daughter and sexual assault by contact with his stepson. The record reflects that the jury's verdicts were for separate offenses and were not multiple convictions and punishments for the same offenses. The doctrine of double jeopardy is not invoked and is not applicable. *See Littrell v. State*, 271 S.W.3d 273 (Tex. Crim. App. 2008). The final two points are overruled.

Through his appellate attorney, appellant has filed a motion seeking the withdrawal of his court-appointed counsel so that he might represent himself on appeal. This motion was filed after the case had been fully briefed and the appeal was submitted to this court. Appellant's request is neither timely nor appropriate at this stage of the proceedings. *Hubbard v. State*, 739 S.W.2d 341 (Tex. Crim. App. 1987). The motion is overruled.

We note that, while court-appointed counsel is not required to file a petition for discretionary review, counsel is required to advise appellant not only of the result of this direct appeal but also of the availability of discretionary review. *Ex parte Webb*, 270 S.W.3d 108, 109 n.4 (Tex. Crim. App. 2008); *Ex parte Wilson*, 956 S.W.2d 25, 27 (Tex. Crim. App. 1997).

All of appellant's contentions on appeal have been considered, and each is overruled. The judgments of the trial court are affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


April 2, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.